# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2021-NMCA-042**

**Filing Date: June 4, 2020**

**No. A-1-CA-36474**

**TIMOTHY YOUNG,**

      Plaintiff-Appellant,

v.

**GILA REGIONAL MEDICAL CENTER and BRYANT BEESLEY, M.D.,**

      Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF GRANT COUNTY**
**J.C. Robinson, District Judge**

Certiorari Dismissed, July 26, 2021, No. S-1-SC-38369; Conditional Cross-Petition Dismissed, July 26, 2021, No. S-1-SC-38369. Released for Publication October 5, 2021.

Kennedy, Kennedy & Ives
Joseph P. Kennedy
Shannon L. Kennedy
Adam C. Flores
Albuquerque, NM

for Appellant

Serpe, Jones, Andrews, Callender & Bell, PLLC
M. Randall Jones
Ryan L. Clement
Houston, TX

for Appellee Gila Regional Medical Center

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Edward R. Ricco
Rick Beitler

Melanie B. Stambaugh
Albuquerque, NM

for Appellee Bryant Beesley, M.D.

**OPINION**

**B. ZAMORA, Judge.**

**{1}**     Plaintiff Timothy Young sued Defendants Gila Regional Medical Center (GRMC), Dr. Bryant Beesley, and others not party to this appeal for negligence, battery, and civil rights violations stemming from a digital rectal examination and x-ray conducted by Beesley while Plaintiff was in the custody of the Hidalgo County Sheriff's Department. Prior to trial, the district court dismissed all claims against GRMC on summary judgment and dismissed Plaintiff's civil rights claims against Beesley on grounds of qualified immunity. Following a trial on the merits for Plaintiff's remaining battery and negligence claims, a jury returned a verdict in favor of Beesley and the district court entered judgment for all Defendants.

**{2}**     On appeal, Plaintiff contends the district court erred in: (1) granting Beesley's motion for summary judgment on qualified immunity grounds and denying Plaintiff's motion for summary judgment on his civil rights claims; (2) denying Plaintiff's motion for judgment as a matter of law against Beesley on Plaintiff's battery claim; (3) dismissing Plaintiff's claim for punitive damages against Beesley; and (4) granting GRMC's motion for summary judgment on the grounds that Plaintiff failed to provide timely notice under the New Mexico Tort Claims Act (the TCA), NMSA 1978, §§ 41-4-1 to -27 (1976, as amended through 2020). We requested supplemental briefing from Plaintiff and Beesley on the issue of qualified immunity. We reverse the district court's orders granting summary judgment in favor of Beesley and denying Plaintiff's motion for summary judgment on his civil rights claims, but otherwise affirm. We remand this matter to the district court for further proceedings to determine whether qualified immunity bars Plaintiff's civil rights claims against Beesley and whether Plaintiff is entitled to judgment on said claims.

**BACKGROUND**

**{3}**     On October 13, 2012, at approximately 9:42 p.m., Plaintiff and a companion were traveling in Plaintiff's vehicle in Lordsburg, New Mexico, when they were pulled over by Deputy Javier Peru of the Hidalgo County Sheriff's Department for failure to signal. According to the officer, Plaintiff's demeanor and actions during the stop gave rise to a suspicion that he was transporting contraband. Deputy Peru requested and received consent from Plaintiff to search his vehicle, which he did with the assistance of two other officers. The search revealed no evidence of a controlled substance, but the officers determined that Plaintiff's "inconsistent stories and nervous behavior" warranted

summoning a K-9 and handler, Lieutenant Patrick Green, to conduct a more thorough search of the vehicle. That search also failed to uncover any drugs inside the vehicle, as did a more thorough frisk of Plaintiff. However, according to Lieutenant Green, the canine alerted to the odor of a controlled substance on the driver's seat and the center console. Based on this alert, Lieutenant Green decided to seek a search warrant for Plaintiff and his vehicle. The officers took Plaintiff into custody and drove him to the Hidalgo County Sheriff's Office to await issuance of the warrant.

{4}     Lieutenant Green applied for the warrant, supporting his application with an affidavit that stated his belief that Plaintiff had drugs "in or on his person." However, Lieutenant Green only "request[ed] that the [c]ourt find[] that probable cause exists to authorize a detailed search of [Plaintiff's] vehicle." At approximately 1:45 a.m., the district court issued a warrant authorizing a search of "the person or property described in the Affidavit."[1] Nothing in the warrant explicitly authorized an invasive search of Plaintiff's body or an x-ray examination.

{5}     Following issuance of the warrant, Lieutenant Green and Deputy Peru transported Plaintiff in handcuffs to GRMC in Silver City. The officers spoke with the intake nurse at the hospital and indicated that they had a warrant and they suspected Plaintiff had either ingested or hidden drugs in his rectum. Plaintiff was taken to an examination room, where Beesley, who was the emergency physician on duty, performed a basic physical examination and took a medical history. Beesley testified that, prior to entering the examination room or speaking with Plaintiff, he reviewed the information in the triage notes in Plaintiff's medical record and knew that Plaintiff was there for a search based on a concern that he had impacted controlled substances in his rectum. He also spoke with law enforcement officers before speaking with Plaintiff, but the parties' accounts of the substance of these conversations vary, as discussed in more detail below. Beesley testified that he "skimmed through" the search warrant but that he did not review it in any detail, determining only that the name on the warrant matched Plaintiff's name, and that he did not believe he read the affidavit. Plaintiff told Beesley that he had not inserted drugs into his rectum, but this did not dissuade Beesley from conducting the examination. Beesley testified his decision to perform the examination was based on his desire to assist law enforcement and his concern that, if Plaintiff had ingested or impacted drugs in his rectum, Plaintiff could suffer a medical emergency if the drugs entered his system.

{6}     Beesley instructed Plaintiff to adjust his position on the examination table to assist in the performance of the digital rectal examination and Plaintiff complied. Plaintiff asked Beesley, "Why we got to do this?" and Beesley replied, "Because I have a warrant." Plaintiff responded, "Let's just get it over with," and Beesley performed the rectal examination. When this examination failed to identify the presence of drugs, Beesley ordered an abdominal x-ray of Plaintiff. This examination also failed to identify the presence of drugs in Plaintiff's body. Plaintiff was later released by the Hidalgo

---

1It is not clear why the warrant requested a search of Plaintiff's vehicle instead of his person. In sworn testimony, Deputy Green stated that he "drafted a search warrant for [Plaintiff's] person."

County Sheriff's Department, after having been in custody for approximately seven hours. He was not charged with any offense.

{7}	Plaintiff filed a complaint against GRMC and Beesley in October 2014, alleging state law claims for battery, negligence, unfair practices, as well as claims for civil rights violations pursuant to 42 U.S.C. § 1983 (2018). Prior to trial, the parties filed numerous motions, including competing motions for summary judgment. Important to this appeal, GRMC and Beesley both sought summary judgment on the basis that qualified immunity shielded them from liability for Plaintiff's civil rights claims, and both challenged Plaintiff's punitive damages claims. Plaintiff filed a competing motion for summary judgment on his civil rights claim against Beesley, alleging that the doctor deprived Plaintiff of his Fourth Amendment right to be free of an unreasonable search. GRMC also filed a motion challenging the district court's subject matter jurisdiction for Plaintiff's battery and negligence claims on the grounds that Plaintiff had failed to provide timely notice under the TCA. The district court granted GRMC's motions for summary judgment and dismissed GRMC from the litigation. The district court also found, with respect to the competing motions for summary judgment on Plaintiff's civil rights claims, that Beesley was shielded by qualified immunity; consequently, the court granted Beesley's motion for summary judgment and denied Plaintiff's motion. All remaining claims, with the exception of Plaintiff's battery and ordinary negligence claims against Beesley, were either dismissed by the court or by stipulation of the parties prior to trial.

{8}	Following the close of evidence, the jury found in favor of Beesley on both claims. After the district court entered final judgment, Plaintiff filed a renewed motion for judgment as a matter of law on his battery claim, which the district court denied.

## DISCUSSION

### I.	Beesley's Motion for Summary Judgment Based on Qualified Immunity and Plaintiff's Motion for Summary Judgment on His § 1983 Claim

{9}	Plaintiff first argues the district court erred in granting Beesley's motion for summary judgment on the basis of qualified immunity and denying his motion for summary judgment on the civil rights claims pursuant to § 1983 (hereinafter § 1983 claim). Plaintiff contends the district court correctly determined that the search warrant did not authorize a digital rectal examination or abdominal x-ray, but that it engaged in a flawed analysis of qualified immunity when it granted Beesley's motion for summary judgment. Plaintiff further argues the district court erred when it denied his own motion for summary judgment on his § 1983 claim because the search warrant in this case did not specifically and particularly authorize an invasive bodily search, rendering the rectal examination and abdominal x-ray unconstitutional as a matter of law. Beesley contends that even if the district court's reasoning in deciding the issue of qualified immunity "is less than transparent," the district court's determination that he was entitled to qualified immunity with respect to Plaintiff's civil rights claims was "indisputably correct as a matter of law[,]" and is dispositive of the § 1983 claim.

**{10}** "The applicability of qualified immunity is a question of law that we review de novo." *Starko v. Gallegos*, 2006-NMCA-085, ¶ 11, 140 N.M. 136, 140 P.3d 1085. While "[§] 1983 provides a cause of action for money damages against a state official in his or her individual capacity for the deprivation of federal constitutional or statutory rights[,]" *Garcia-Montoya v. State Treasurer's Office*, 2001-NMSC-003, ¶ 8, 130 N.M. 25, 16 P.3d 1084, "an individual official's liability is limited by the doctrine of qualified immunity, which shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Starko*, 2006-NMSC-085, ¶ 11 (internal quotation marks and citation omitted); *see Garcia-Montoya*, 2001-NMSC-003, ¶ 8 ("Qualified immunity is necessary to protect public officers from undue interference with their duties and from potentially disabling threats of liability." (internal quotation marks and citation omitted)). "A finding of qualified immunity shields [an] officer from suit, not just from liability for monetary damages." *Romero v. Sanchez*, 1995-NMSC-028, ¶ 3, 119 N.M. 690, 895 P.2d 212.

**{11}** A claim under § 1983 requires that the alleged deprivation of a plaintiff's constitutional right be committed by a person acting under color of state law. 42 U.S.C. § 1983; *see Warner v. Grand Cty.*, 57 F.3d 962, 964 (10th Cir. 1995). Although Beesley is a private individual and not a state official, "[s]tate action may be found in the exercise by a private individual of powers traditionally exclusively reserved to the [s]tate." *Rodriques v. Furtado*, 950 F.2d 805, 813 (1st Cir. 1991) (internal quotation marks and citation omitted); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (stating that a private party need not be a member of law enforcement to act "under color of law," and providing that a party who "is a willful participant in joint activity with the [s]tate or its agents" acts "under color of law" for purposes of the statute (internal quotation marks and citation omitted)). As a result, federal courts have also recognized in limited circumstances that when a private individual assumes the role of a state actor in conducting a search traditionally within the power of the state, he may be entitled to the defense of qualified immunity. *Warner*, 57 F.3d at 967 (holding that "a private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself"); *Rodriques*, 950 F.2d at 815 (holding that a doctor was entitled to the defense of qualified immunity where his liability was "asserted upon the fact that he operated as a state actor in conducting a search procedure traditionally within the power of the [s]tate"). The parties do not dispute that Beesley functioned as a state actor here.

**{12}** Once a defense of qualified immunity has been raised by a defendant, in order to defeat it, the "plaintiff must demonstrate that (1) the defendant's alleged conduct violated a constitutional or statutory right, and (2) the right was clearly established at the time of the [alleged] conduct." *Benavidez v. Shutiva*, 2015-NMCA-065, ¶ 6, 350 P.3d 1234 (internal quotation marks and citation omitted). "For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Doe v. Leach*, 1999-NMCA-117, ¶ 10, 128 N.M. 28, 988 P.2d 1252 (alteration, internal quotation marks, and citation omitted). A plaintiff must do more than invoke an abstract right; the right claimed by the

plaintiff must be "clearly established in a particularized sense." *Yount v. Millington*, 1993-NMCA-143, ¶ 28, 117 N.M. 95, 869 P.2d 283 (internal quotation marks and citation omitted). However, the plaintiff need not show that "the very action in question has previously been held unlawful." *Chavez v. Bd. of Cty. Comm'rs of Curry Cty.*, 2001-NMCA-065, ¶ 16, 130 N.M. 753, 31 P.3d 1027 (internal quotation marks and citation omitted); *see id.* ¶ 20 (stating that "the absence of a case directly on point does not mean that a public official is automatically entitled to qualified immunity"). "The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

**{13}** Plaintiff argues Beesley violated his clearly established constitutional right to be free from an unreasonable search by conducting a digital rectal examination and authorizing an abdominal x-ray on him without being presented with a warrant that specifically authorized an invasive bodily search. Beesley, focusing primarily on the second prong of the qualified immunity analysis, argues that Plaintiff failed to establish "that a reasonable physician would not have performed a rectal examination and ordered an abdominal x-ray of [Plaintiff] when presented with a search warrant for [Plaintiff]'s 'person' " and because it was reasonable for Beesley to rely on the officers' representations that the search was authorized. We first address whether Beesley's conduct violated a constitutional right, and then we address whether the right was clearly established at the time of the conduct.

## A.    Constitutional Violation

**{14}** The Fourth Amendment guarantees the right to be free of unreasonable searches and seizures. U.S. Const. amend. IV. Its "overriding function . . . is to protect personal privacy and dignity against unwarranted intrusion by the [s]tate." *Schmerber v. California*, 384 U.S. 757, 767 (1966). Absent "a few specifically established and well-delineated exceptions[,]" such as consent or exigent circumstances,[2] a law enforcement search is per se unreasonable if conducted without a warrant. *Katz v. United States*, 389 U.S. 347, 357 (1967); *Doe v. Woodard*, 912 F.3d 1278, 1290-91 (10th Cir. 2019) (stating that warrantless searches are per se unreasonable, subject to exceptions based on consent, exigent circumstances, or "special needs beyond the normal need for law enforcement" (internal quotation marks and citation omitted)). The issuance of a warrant requires the existence of "probable cause, supported by [o]ath or affirmation, and

---

2Neither exception applies to this case. Although Beesley contends he was concerned for Plaintiff's health during the examination, he has not argued that exigent circumstances obviated the need for a search warrant. While he has alleged consent with respect to Plaintiff's battery claim, which we discuss below, he has not argued that Plaintiff offered the type of consent "freely and voluntarily given" that would defeat the need for a warrant authorizing a search by law enforcement. *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968); *see United States v. Sanchez*, 608 F.3d 685, 690 (10th Cir. 2010) (stating that consent requires "clear and positive testimony that consent was unequivocal and specific and freely and intelligently given" in the absence of "implied or express duress or coercion" (internal quotation marks and citation omitted)). In any case, "[a] search conducted in reliance upon a warrant cannot later be justified on the basis of consent if it turns out that the warrant was invalid." *Bumper*, 391 U.S. at 549.

particularly describing the place to be searched and the persons or things to be seized." U.S. Const. amend. IV.

{15} It is settled law that the intrusiveness of a search is a critical factor in determining its reasonableness, and that searches of the interior of the body are among the most intrusive searches law enforcement may conduct. *See Schmerber*, 384 U.S. at 767 (stating "overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the [s]tate"). Consequently, in *Schmerber*, the United States Supreme Court held that search warrants are ordinarily "required where intrusions into the human body are concerned." *Id.* at 770; *see Marshall v. Columbia Lea Reg'l Hosp.*, 474 F.3d 733, 741 (10th Cir. 2007) (stating that a blood draw requires either a warrant or probable cause and an exigent circumstance). The court further held that the Fourth Amendment "forbid[s bodily] intrusions on the mere chance that desired evidence might be obtained," stating that "[s]earch warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned." *Schmerber*, 384 U.S. at 770.

{16} Although *Schmerber* concerned a blood draw, the clear weight of authority from the federal and state courts is that body cavity searches also require a warrant supported by probable cause. *See, e.g., Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1449-50 (9th Cir. 1991) (holding that a warrant was required to conduct body cavity searches); *State v. Barnes*, 159 P.3d 589, 591 (Ariz. Ct. App. 2007) (holding that law enforcement must obtain a warrant before removing items partially protruding from an arrestee's rectum); *People v. More*, 764 N.E.2d 967, 969 (N.Y. 2002) (holding warrantless body cavity search incident to arrest was unreasonable where there was no evidence that the delay necessary to obtain a warrant posed threat to officer safety or destruction of the evidence); *Hughes v. Commonwealth*, 524 S.E.2d 155, 160-61 (Va. Ct. App. 2000) (holding that a manual body cavity search was unreasonable where officer did not have a warrant and plaintiff consented only to a pat-down search); *see also United States v. Booker*, 728 F.3d 535, 547 (6th Cir. 2013) (stating that "when there [is] time to obtain a court order and the police decline[] to seek one, the suspect's privacy interests should be given particular solicitude"). This is not surprising, because federal courts have consistently held that body cavity searches are particularly degrading, embarrassing, and humiliating. *See United States v. Gray*, 669 F.3d 556, 564-65 (5th Cir. 2012) (stating that proctoscopic examination of the plaintiff's anus "targeted an area of the body that is highly personal and private"), *vacated on other grounds by* 568 U.S. 802 (2012); *Blackburn v. Snow*, 771 F.2d 556, 564 (1st Cir. 1985) (describing a visual and manual body cavity inspection as "perhaps the greatest personal indignity searching officials can visit upon an individual" (internal quotation marks and citation omitted)); *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1272 (7th Cir. 1983) (describing body cavity searches as "demeaning, dehumanizing, undignified, humiliating, terrifying, unpleasant, embarrassing, repulsive, signifying degradation and submission" (internal quotation marks and citation omitted)); *United States v. Cameron*, 538 F.2d 254, 258 (9th Cir. 1976) (stating that "the person accused of concealing contraband within his body is faced with the real prospect that the most intimate portions of his anatomy will be invaded").

**{17}**  The Fourth Amendment also requires that warrants specify *with particularity* "the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "Specificity is required in the warrant itself in order to limit the discretion of the executing officers as well as to give notice to the party searched." *United States v. Johnson*, 541 F.2d 1311, 1315 (8th Cir. 1976).[3] Consequently, "[t]he uniformly applied rule is that a search conducted pursuant to a warrant that fails to conform to the particularly requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation marks and citation omitted) (stating that "the presumptive rule against warrantless searches applies with equal force to searches whose only defect is a lack of particularity in the warrant" and holding that a warrant that failed to describe items to be seized with particularity was so obviously deficient as to render the search "warrantless"). In the context of invasive body searches, federal courts have recognized that the specificity requirement necessitates that the warrant identify the area of the body to be searched with particularity, and that boilerplate language authorizing the search of the defendant's " 'person' was not sufficient to authorize a body cavity search." *United States v. Nelson*, 36 F.3d 758, 760 (8th Cir. 1994) (holding that even though the supporting affidavit requested permission to conduct a body cavity search, it could not cure the generality of the warrant because the affidavit was not incorporated by reference into the warrant); *see Gray*, 669 F.3d at 565 (holding that the search of arrestee using proctoscope exceeded the scope of a warrant authorizing "a qualified medical technician to examine [the defendant] for the concealment of controlled substances and to remove said controlled substances from his body in accordance with recognized accepted medical procedure"); *Spencer v. Roche*, 659 F.3d 142, 144-48 (1st Cir. 2011) (holding digital rectal examination and x-ray of plaintiff's organs surrounding the anal cavity was not unreasonable where warrant specified "anal cavity" search).

**{18}**  In this case, the search warrant authorized only a search of the "person or property specified in the affidavit" which, in turn, requested authority only to search Plaintiff's *vehicle*. We think it manifestly clear that the warrant did not authorize a search of Plaintiff's person, let alone an invasive search of Plaintiff's body, thereby rendering the search unconstitutional as a matter of law.[4] *See Williams v. Kaufman Cty.*, 352 F.3d 994, 1004-05 (5th Cir. 2003) (holding that a strip search of patrons at a night club violated clearly established constitutional law where a warrant authorized only the search of the premises); *Bolden v. Vill. of Monticello*, 344 F. Supp. 2d 407, 419 (S.D.N.Y. 2004) (holding that warrant authorizing search of premises and "persons" did not authorize strip searches or visual or invasive body cavity searches of detainees).

---

3Some courts have held that specificity in an affidavit may cure the lack of particularity in a warrant, provided the affidavit accompanies the warrant and the warrant uses appropriate words of incorporation. *Johnson*, 541 F.2d at 1315. Here, however, even though the affidavit included Deputy Green's assertion that he believed Plaintiff was concealing drugs "in or on his person[,]" the warrant only requested authority for a search of Plaintiff's vehicle.

4We are not persuaded by Beesley's claim that "[i]t takes little effort and nothing more than common sense to understand that the warrant was intended to target [Plaintiff's] rectal area" if the warrant and affidavit are read together. Whatever Deputy Green "intended" when he applied for the warrant, the affidavit specifically requested only a search of Plaintiff's vehicle.

We therefore hold there are no genuine issues of material fact that the procedures performed by Beesley violated the Fourth Amendment.[5]

## B.    Clearly Established

**{19}**    Having found that Plaintiff has established a constitutional violation, we turn next to the question of whether the law prohibiting the search was clearly established at the time it was conducted. *See Romero*, 1995-NMSC-028, ¶ 5. We examine this question in light of the circumstances of this case, asking whether "an objectively reasonable, similarly situated official would have known that the challenged actions would violate the Constitution." *Cockrell v. Bd. of Regents of N.M. State Univ.*, 1999-NMCA-073, ¶ 9, 127 N.M. 478, 983 P.2d 427; *see Sanchez v. Pereira-Castillo*, 590 F.3d 31, 54-55 (1st Cir. 2009) (holding that the court must determine whether a reasonable physician would have understood that her conduct violated the plaintiff's Fourth Amendment right to be free of unreasonable searches and seizures for purposes of qualified immunity). "In evaluating whether the law was clearly established, we ordinarily look to decisions of the United States Supreme Court, the federal courts of appeal, and the highest state court where the cause of action arose." *Chavez*, 2001-NMCA-065, ¶ 20.

**{20}**    Beesley argues that, as a physician and "a non-expert in the law," he could not be expected to know that he was not permitted to search the body cavity of Plaintiff's body in the absence of a particularized warrant authorizing such a search. This is incorrect. "[A] reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). Specifically, an attending physician is required "to learn the constitutional requirements of invasive body searches." *Rodriques*, 950 F.2d at 815; *see Sanchez*, 590 F.3d at 55 (stating "physicians asked to perform invasive body searches should not comply uncritically with the requests of prison officials and thereby become complicit in depriving prisoners of their constitutional rights"). For this reason, a reasonable physician should have known that a manual rectal cavity search and abdominal x-ray were unconstitutional unless authorized by a valid, particularized warrant, as discussed above.

**{21}**    Given this framework, we must evaluate whether a physician in Beesley's position could "reasonably but mistakenly conclude" that his actions were lawful and in accordance with the Fourth Amendment. *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). On the record before us, Beesley did not claim to have read the search warrant affidavit or to have critically read the warrant itself beyond confirming that it pertained to Plaintiff, nor does the record reflect that he consulted with anyone other than the officers about the warrant. *See, e.g.*, *State v. Brown*, 932 N.W.2d 283, 287 (Minn. 2019) (noting that the doctor at the first hospital refused a police officer's request to expand the search of the defendant suspected of concealing drugs in his rectum beyond a visual

---

[5]In analyzing whether Beesley violated the Fourth Amendment, the parties do not distinguish between the cavity search and the x-ray search and so neither have we. *See State ex rel. Human Servs. Dep't v. Staples*, 1982-NMSC-099, ¶¶ 3, 5, 98 N.M. 540, 650 P.2d 824 (stating that "courts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailor the case to fit within their legal theories" (alteration, internal quotation marks, and citation omitted)).

examination after consulting with the hospital's lawyer, and that the police officer then obtained a more particularized warrant and took the defendant to a second hospital where the doctor consulted with the on-call deputy county attorney before executing the second warrant); *see also Rodriques*, 950 F.2d at 815-16 (holding that, where a warrant specified a vaginal search and was facially valid, the physician was entitled to qualified immunity whether or not the warrant was supported by probable cause). Because Beesley took no action to independently verify the scope of the warrant's authorization, the question we review is narrow: whether a reasonable physician would have believed a manual search of Plaintiff's rectum or an x-ray of his abdomen was lawful based on the information conveyed by the police officers who held Plaintiff in custody. *See Chavez*, 2001-NMCA-065, ¶ 26 ("The relevant question is whether a reasonable officer could have believed the warrantless . . . search to be lawful, in light of the clearly established law *and the information possessed at the time*." (emphasis added)).

**{22}**     We, however, are unable to determine, on the record before us, the answer to this question because the parties gave conflicting and various accounts of the information conveyed by the officers and the extent to which Beesley relied upon it when deciding to perform the rectal examination and x-ray. *See Zamora v. St. Vincent Hosp.*, 2014-NMSC-035, ¶ 9, 335 P.3d 1243 ("In reviewing an order on summary judgment, we examine the whole record on review, considering the facts in a light most favorable to the nonmoving party and drawing all reasonable inferences in support of a trial on the merits."). First, it is unclear what the officers told Beesley about the warrant. For example, at trial, Beesley testified that, based on a triage note, he knew before speaking with the officers that Plaintiff was at the hospital for a search and that the concern was either ingestion or rectal impaction of controlled substances. Beesley testified that he spoke with the officers when he entered the examination room, and when asked specifically what the officers represented to him, Beesley responded, "That they were here with the patient, they suspected drug ingestion, and that I find out whether he impacted or ingested drugs." Beesley answered "Yes" when asked if the officers represented to him that the warrant "authorized [him] to do the examination to look for the drugs." Because the question posed to Beesley failed to specify the type of examination authorized by the warrant, we cannot say whether the officers represented that the warrant authorized an invasive search. However, Plaintiff testified in his deposition that he "heard the officer stat[e] that he needed a warrant executed, and it was for the searching of me, and they wanted x-rays, and they wanted . . . a digital exam or something to my rectum." If this testimony is credited and it is found that Beesley merely conducted the search the officers represented was authorized by the warrant, he may have been entitled to rely on the representations of law enforcement. "If police officers, trained in Fourth Amendment law and specifically charged to conduct their activities in conformance with the Constitution, are entitled to rely on legal or factual determinations made by other officers, then [medical professionals] should be able to do the same." *Marshall*, 345 F.3d at 1180 (stating that it is objectively reasonable for private parties to rely on the orders and determinations of law enforcement officials); *see also Warner*, 57 F.3d at 967 ("We hold that a private individual who performs a government function pursuant to a state order or request is entitled to qualified immunity if a state official would have been entitled to such immunity had he performed the function himself."); *cf. Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d

1022, 1028 (9th Cir. 2002) (stating it is well settled that police officers may "accept the word of their superiors that they have a warrant and that it is valid[,]" and "so long as they make inquiry as to the nature and scope of the warrant, their reliance on [a superior's] representations about it is reasonable" (alterations, internal quotation marks, and citation omitted)); *Guerra v. Sutton*, 783 F.2d 1371, 1375 (9th Cir. 1986) (stating that it is not necessary for line officers to see a warrant authorizing a search, but such officers had a duty to inquire as to the nature and scope of the warrant).

**{23}** The record here is also ambiguous as to the extent Beesley relied upon the information conveyed by the officers in deciding the scope of the search. At trial, for example, Beesley testified that he did not recall whether Lieutenant Green directed him to perform the digital rectal examination of Plaintiff, but that he "pretty much knew what [he] was going to do before [he] came into the [examination] room." He also testified that he was concerned that if Plaintiff had drugs in his rectum, there was a risk to Plaintiff if one of the packets ruptured and the drugs entered his system. If Beesley chose the procedure on his own initiative using his own judgment, then he would not be entitled to qualified immunity under the circumstances. *Cf. Huguez v. United States*, 406 F.2d 366, 378-79 (9th Cir. 1968) (holding that without a search warrant, a physician was not justified in performing a digital rectal probe and the search could not be upheld as a constitutional border search); *see also George v. Edholm*, 752 F.3d 1206, 1221 (9th Cir. 2014) ("Case law clearly established that the possibility that a baggie of drugs could rupture, standing alone, cannot justify a warrantless search as intrusive as that conducted here.").

**{24}** Because there are factual disputes as to the content of the officers' representations concerning the validity and permissible scope of the search and Beesley's reliance on those representations in conducting the search, it was error for the district court to conclude as a matter of law that Beesley was entitled to qualified immunity. On remand, the district court should determine whether Beesley relied on any representations of law enforcement regarding the lawfulness and scope of the search, and if so, whether Beesley's reliance upon those representations was objectively reasonable under the circumstances.

**{25}** For all the foregoing reasons, we reverse the district court's grant of summary judgment in favor of Beesley. Likewise, because the district court's denial of Plaintiff's motion for summary judgment on his § 1983 claim was based on its flawed determination that Beesley was entitled to qualified immunity as a matter of law, we reverse the district court's ruling in this regard. We remand for further proceedings consistent with this opinion.

**II.     Plaintiff's Motion for Summary Judgment as a Matter of Law on the Issue of Consent**

**{26}** Plaintiff's second claim of error is that the district court erred when it denied his motion for summary judgment on his battery claim on the ground that he could not

consent to Beesley's examination as a matter of law.[6] Plaintiff's principal contention is that, because there was no physician-patient fiduciary relationship between Plaintiff and Beesley, the law governing consent to battery that applies in the medical context should not have been applied. In particular, Plaintiff asserts that implied consent applies only in the context of fiduciary relationships, like the physician-patient relationship, and, in the absence of such a relationship here, Beesley could not, as a matter of law, rely on an implied consent defense. Citing Fourth Amendment search and seizure law, Plaintiff additionally argues in brief that his "acquiescence to a search under the representation of authorization from a warrant cannot legally provide consent to a search." Beesley asserts that there was sufficient evidence of a physician-patient relationship between the parties and, even if there was not, a defense of consent is available to Beesley because Plaintiff "is wrong in assuming that a consent defense to battery only exists in the context of a physician-patient relationship." For the reasons that follow, we agree with Beesley's second contention.

**{27}** Our review of a district court's decision on a motion for judgment as a matter of law is de novo. *See Richter v. Presbyterian Healthcare Servs.*, 2014-NMCA-056, ¶ 56, 326 P.3d 50. "A directed verdict is appropriate only when there are no true issues of fact to be presented to a jury. The sufficiency of evidence presented to support a legal claim or defense is a question of law for the district court to decide." *Rist v. Design Ctr. at Floor Concepts*, 2013-NMCA-109, ¶ 7, 314 P.3d 681 (alteration, omission, internal quotation marks, and citation omitted).

**{28}** As noted, Plaintiff's primary contention is that the defense of consent was only available to Beesley if a physician-patient fiduciary relationship existed. Plaintiff has failed to support this premise.[7] For the proposition that "an implied consent defense . . . exists at law only within the context of a fiduciary relationship," Plaintiff cites no supporting authority. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). In contrast, as argued by Beesley and confirmed by our review of New Mexico authority, our courts have imposed no such limit on the defense of consent. Our courts have long held that "[c]onsent is a defense for intentional torts like assault and battery." *Yount v. Johnson*, 1996-NMCA-046, ¶ 17, 121 N.M. 585, 915 P.2d 341 (citing approvingly to Restatement (Second) of Torts §§ 892-892D (Am. Law Inst. 1979)); *see also Giron v. Corr. Corp. of Am.*, 191 F.3d 1281, 1288 (10th Cir. 1999) (noting lack of New Mexico uniform jury instruction for assault and battery, but concluding "it was proper to instruct the jury on consent with regard to the intentional

---

6It is unclear which district court ruling Plaintiff is challenging, as he moved twice for judgment as a matter of law on his battery claim in the court below, and he has failed to specify which ruling he is challenging on appeal. Because the motions rely upon the same theory and authorities and are nearly identical in form and substance to each other and to Plaintiff's argument on appeal, our disposition of this issue applies equally to the district court's denial of both motions.

7Because the premise upon which Plaintiff argues the defense of consent was unavailable to Beesley is in incorrect, we need not and do not resolve whether a physician-patient relationship existed between Plaintiff and Beesley.

tort claims"). The Restatement (Second) of Torts, of which this Court has embraced, *see Yount*, 1996-NMCA-046, ¶ 17, sets out a broad definition of consent:

> (1)    Consent is willingness in fact for conduct to occur. It may be manifested by action or inaction and need not be communicated to the actor.
>
> (2)    If words or conduct are reasonably understood by another to be intended as consent, they constitute apparent consent and are as effective as consent in fact.

Restatement (Second) of Torts § 892 (Am. Law Inst. 1979). This definition of consent encompasses both express and implied consent. Nothing in the Restatement or in our case law suggests implied (or express) consent is limited to fiduciary relationships as Plaintiff submits, nor, as already noted, has Plaintiff cited any support for this proposed limitation. *See Curry*, 2014-NMCA-031, ¶ 28. Thus, we conclude Plaintiff's argument that Beesley should not be permitted an implied consent defense in absence of a fiduciary relationship is not well-supported nor borne out by our review.

**{29}**    As for Plaintiff's second argument, while we agree duress may vitiate a party's consent to battery, *see* Restatement (Second) of Torts § 892B(3) (Am. Law Inst. 1979) ("Consent is not effective if it is given under duress."), we conclude Plaintiff's undeveloped argument that the circumstances at issue here "show duress as a matter of law" does not carry the day. In support of Plaintiff's contention, he cites Fourth Amendment cases for the exclusionary rule used to deter unreasonable searches and seizures when a consent to a search is found to be involuntary. Plaintiff, however, fails entirely to explain why this body of law ought to be imported into the tort context, and we are under no obligation to develop such an argument on our own.[8] *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, [the appellate court] would have to develop the arguments ourself, effectively performing the parties' work for them."); *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 ("We will not review unclear arguments, or guess at what his arguments might be."). In short, Plaintiff has failed to develop why his claim of duress should foreclose Beesley's consent defense as a matter of law.

**{30}**    What is more, whether Plaintiff agreed to the examinations at issue was a question of fact vigorously contested by the parties at trial. For the reasons stated, we conclude that the district court did not err in denying Plaintiff's motion for summary

---

8Moreover, we note the potential difficulties and complexities of importing principles from the Fourth Amendment consent to search context, which examines from the perspective of the individual subject to the search (i.e., the criminal defendant), whether the totality of the circumstances supports a finding that a criminal defendant's will has been overborne, *see State v. Davis*, 2013-NMSC-028, ¶¶ 13-14, 304 P.3d 10 (setting out standard for determining voluntariness of consent), into the tort context, which examines from the perspective of the alleged batterer (i.e., the civil defendant) whether the circumstances are reasonably understood by the alleged batterer to be implied consent. *See* Restatement (Second) of Torts § 892.

judgment as a matter of law on his battery claim and submitting the issue to the jury. *See Melnick v. State Farm Mut. Auto. Ins. Co.*, 1988-NMSC-012, ¶ 11, 106 N.M. 726, 749 P.2d 1105 (stating that a district court should not grant a motion for directed verdict unless it is clear that "the facts and inferences are so strongly and overwhelmingly in favor of the moving party that the judge believes that reasonable people could not arrive at a contrary result").

### III.  Beesley's Motion for Summary Judgment on Punitive Damages

**{31}**  Plaintiff's third claim of error is that the district court erred when it granted Beesley's motion for summary judgment on his punitive damages claim. He contends the district court improperly required him to prove Beesley's culpable mental state prior to trial and applied an incorrect legal standard in granting Defendant's motion. Beesley argues exclusively that we should not reach this issue because any error complained of could only have been harmless, given the jury's verdict in Beesley's favor on negligence and battery.

**{32}**  We agree with Beesley that any error was harmless. The jury having determined that Beesley was not liable for either battery or negligence, it could not have awarded punitive damages to Plaintiff. *See Archer v. Roadrunner Trucking, Inc.*, 1997-NMSC-003, ¶ 13, 122 N.M. 703, 930 P.2d 1155 (stating that "before a plaintiff may recover punitive damages he or she must state a cause of action under which he or she is *entitled* to actual, compensatory, or nominal damages, depending on the nature of the case"); *Woody Inv., LLC v. Sovereign Eagle, LLC*, 2015-NMCA-111, ¶ 36, 362 P.3d 107 (citing out-of-state authority favorably for the proposition "that where a plaintiff does not prevail on liability, any errors alleged as to damages are harmless"). Any error in granting Beesley's motion for summary judgment on punitive damages, as it relates to the claims tried to the jury, was therefore harmless.

### IV.  Claims Against GRMC

**{33}**  Plaintiff makes one claim of error against GRMC. Plaintiff contends that the district court erred when it granted GRMC summary judgment for lack of subject matter jurisdiction, determining Plaintiff failed to satisfy the notice requirements in Section 41-4-16 of the TCA. Based on our rulings herein, as well as the number of district court rulings left unchallenged by Plaintiff on appeal, we conclude no claims against GRMC survive, and, as such, we need not and do not reach Plaintiff's claim of error as to GRMC. *See Crutchfield v. N.M. Dep't of Taxation & Revenue*, 2005-NMCA-022, ¶ 36, 137 N.M. 26, 106 P.3d 1273 ("A reviewing court generally does not decide academic or moot questions.").

**{34}**  Against GRMC, Plaintiff alleged claims of negligence (medical and ordinary), lack of consent, unfair practices, battery, false imprisonment, civil rights violations on theories of vicarious liability and municipality liability, and due process violations. As for any § 1983 claims against GRMC, Plaintiff conceded that there was no official policy of GRMC that led to the deprivation of his rights and, as such, the district court dismissed Plaintiff's § 1983 municipality claims against GRMC. The district court further declined

to permit a theory of vicarious liability for Plaintiff's § 1983 claims against GRMC. Plaintiff has challenged neither of these rulings on appeal. The district court's dismissal of Plaintiff's medical negligence, lack of consent, and due process claims also were not appealed. Plaintiff further stipulated to the dismissal of his unfair practices and false imprisonment claims. Plaintiff's ordinary negligence and battery claims against GRMC were based on an agency theory, seeking to hold GRMC liable for Beesley's actions. Plaintiff did not appeal the jury's verdict in favor of Beesley on ordinary negligence, and we have upheld the jury's verdict in favor of Beesley on battery. Because of this, there is no basis for Plaintiff to proceed against GRMC on his ordinary negligence and battery claims. There being no claims standing against GRMC, Plaintiff's TCA argument is moot.

**CONCLUSION**

**{35}**    For the foregoing reasons, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

**{36}    IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**