**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 6, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

<u>PUBLISH</u>

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

MATHEW CARABAJAL, a/k/a
Mathew K. Carabajal Jacoby; V.M.C.,
a minor by and through his parents and
next friends, Mathew Carabajal and
Ariana Martinez,

      Plaintiffs - Appellants,

v.

CITY OF CHEYENNE, WYOMING;
OFFICERS JOSH THORNTON;
MICHAEL SUTTON, in their
individual capacities,

      Defendants - Appellees,

and

CHEYENNE POLICE
DEPARTMENT; OFFICERS PAT
JOHNSTON; MATTHEW COLSON,

      Defendants.

No. 15-8139

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF WYOMING**
**(D.C. No. 2:14-CV-00188-SWS)**

---

Carolyn M. Nichols (and Alicia C. Lopez of Rothstein, Donatelli, Hughes,
Dahlstrom, Schoenburg & Bienvenu, L.L.P, Albuquerque, New Mexico; Richard
Wolf, Cheyenne, Wyoming, on the brief), for Plaintiffs - Appellants.

William S. Helfand (and Norman Ray Giles of Chamberlain, Hrdlicka, White, Williams & Aughtry, P.C., Houston, Texas; J. Mark Stewart of Davis & Cannon, L.L.P., Cheyenne, Wyoming, on the brief), for Defendant - Appellee City of Cheyenne, Wyoming.

Lance E. Shurtleff, (Kenneth H. Lyman and Jacob D. Massee of Hall & Evans, L.L.C., on the brief), Denver, Colorado, for Defendants - Appellees Officers Joshua Thornton and Michael Sutton.

─────────────

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.

─────────────

**KELLY**, Circuit Judge.

─────────────

Plaintiffs-Appellants Mathew Carabajal and his son, V.M.C., through Mathew and V.M.C.'s mother, Arianna Martinez, appeal from the district court's judgment in favor of Defendants-Appellees Officers Joshua Thornton and Michael Sutton, and Defendant-Appellee City of Cheyenne ("the City"). On appeal, Plaintiffs challenge the district court's grant of a motion to dismiss Plaintiffs' Fourth Amendment claim of unlawful seizure of V.M.C. by Officer Thornton when he shot into the vehicle that V.M.C. occupied. Plaintiffs also challenge the grant of summary judgment in favor of the officers based upon qualified immunity as to Mr. Carabajal's excessive force claims. Finally, Plaintiffs challenge the district court's initial dismissal of, and later grant of summary judgment in favor of the City on, Plaintiffs' claims of negligent hiring of Officer Thornton. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

## Background

This appeal arises out of an officer-involved shooting in the early morning hours of September 19, 2011. At approximately 3:50 a.m., Mr. Carabajal was driving a vehicle containing three other individuals, including his infant son V.M.C., when he noticed that he was being followed by a police vehicle with its lights and siren activated. Mr. Carabajal drove for several blocks. Other officers were notified and reported to the scene. Although the facts are discussed in greater detail below as pertinent, ultimately Mr. Carabajal pulled over, the officers exited their police cars, and Officer Thornton stepped in front of Mr. Carabajal's vehicle. Soon thereafter, Mr. Carabajal's vehicle began to move forward. Officer Thornton then fired two rounds from his shotgun at Mr. Carabajal, severely injuring him. At that time, V.M.C. was still in the vehicle, secured in a car seat behind the front passenger. Officers Thornton and Sutton subsequently removed Mr. Carabajal from the vehicle.

Plaintiffs sued the City, its police department, and four officers, including Officers Thornton and Sutton, in their individual capacities, asserting several claims. On a motion by the City, the district court dismissed without prejudice V.M.C.'s claim that he was unlawfully seized when Officer Thornton shot into the vehicle in which he was an occupant. It later granted summary judgment on other claims, finding that the officers were entitled to qualified immunity on Mr. Carabajal's excessive force claims, that the complaint did not plead a negligence

claim based on the alleged negligent hiring of Officer Thornton, and, even if it did, that the City was entitled to judgment as a matter of law on the negligence claim due to a lack of evidentiary support. Carabajal v. City of Cheyenne, No. 2:14-CV-0188-SWS, 2015 WL 9906393 (D. Wyo. Dec. 3, 2015). Though V.M.C.'s unlawful seizure claim was dismissed without prejudice, for practical purposes we think that the district court intended to bar the entire remaining action when it granted judgment; hence, we have a final judgment. Moya v. Schollenbarger, 465 F.3d 444, 448–51 (10th Cir. 2006).

Discussion

## A.    **Excessive Force Claims and Qualified Immunity**

We first turn to Mr. Carabajal's challenges with respect to the grant of qualified immunity on his excessive force claims.

### 1.    *Relevant Facts*

To assess the constitutionality of the officers' actions, we must first determine the relevant facts. Scott v. Harris, 550 U.S. 372, 378 (2007). Although there are some differences in the parties' accounts of what occurred, we must view the facts and draw reasonable inferences in the light most favorable to Mr. Carabajal, the party opposing summary judgment. Id. However, we cannot ignore clear, contrary video evidence in the record depicting the events as they occurred. See id. at 380 ("When opposing parties tell two different stories, one of

-4-

which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Here, the events were captured on video, and, as in Scott, there are no allegations that the footage has been doctored or altered. Accordingly, we rely on this evidence here, though we are mindful that the video evidence did not capture all that occurred. While relying on this video footage, we continue to view the evidence in the light most favorable to Mr. Carabajal. See Thomas v. Durastanti, 607 F.3d 655, 659 (10th Cir. 2010).

Viewed in that light, Mr. Carabajal was driving his partner, their infant son V.M.C., and Mr. Carabajal's cousin. His partner sat next to him in the passenger seat, while his cousin sat in the back with V.M.C., who was secured in a car seat. At some point, they noticed a police car following them. Officer Johnston, who was driving the police car, activated his emergency lights and sirens and Mr. Carabajal did not stop.[1] During this time, Mr. Carabajal obeyed the speed limit and used his turn signals. 1 Aplt. App. 229 (Officer Johnston's dash cam at 1:12–2:29). Officer Johnston reported a car "running" and noted that there were

---

[1] Mr. Carabajal elected not to pull over initially because he wanted to give his cousin "a fair chance to run," as his cousin "freak[ed] out" when he noticed they were being followed by a police car and expressed concern that he might have to return to jail. Carabajal, 2015 WL 9906393, at *1 (citing Mr. Carabajal's deposition testimony). Of course, the officers were unaware of Mr. Carabajal's motivation.

three occupants in the car.  Id. (1:15–2:38).  After driving for approximately six blocks and turning several times, Mr. Carabajal pulled over and stopped the vehicle.  Id. (1:15–16, 2:25–38).  Officer Johnston pulled over to the rear of the vehicle and instructed Mr. Carabajal and the other occupants not to run and to keep their hands out of the window.  Id. (2:37–53).

Soon thereafter, Officers Thornton and Colson arrived at the scene, and parked their vehicles in the street facing Mr. Carabajal's vehicle.  Id. (3:17).  It bears noting that Officers Thornton and Colson were not involved in the initial pursuit of Mr. Carabajal's vehicle.  Both officers exited their respective vehicles.  After Mr. Carabajal's cousin opened the back passenger door with his hands out, Officer Thornton moved in front of Mr. Carabajal's vehicle.  Id. 248 (Officer Colson's dash cam at 3:23–37).  Mr. Carabajal then opened the door and momentarily put his foot outside of the vehicle before stepping back into the car and shutting the door.  Id. 229 (3:28–30).  Mr. Carabajal's cousin subsequently exited the vehicle.  Id. (3:45–50).

At approximately the same time, Officer Thornton shouted, with his shotgun aimed at the vehicle, "Don't start the car or I'll shoot."  Id. 28, 248 (3:42).  The car then moved forward slowly toward the middle of the street, and in the direction of Officer Thornton.  Id. 229 (3:50–53); id. 248 (3:44–46); 3 Aplt. App. 671 (Officer Thornton's dash cam at 3:16–18).  Approximately three seconds after the car began moving forward, Officer Thornton stepped toward the

middle of the street and in front of Mr. Carabajal, and fired two rounds at him. 1 Aplt. App. 229 (3:53); id. 248 (3:47–48); 3 Aplt. App. 671 (3:19–20). The car continued to move forward for several seconds and then stopped, though it is not clear from the video evidence how this occurred. 1 Aplt. App. 229 (3:53–4:03). What is clear, however, is that both officers tried to stop the car from continuing to roll forward by putting their feet against the bumper of the vehicle. Id. 248 (3:50–55).

A few minutes later, the officers opened the driver's side door, as Mr. Carabajal remained in the driver's seat. Id. 229 (8:48). Officer Sutton removed Mr. Carabajal from the vehicle, during which Mr. Carabajal fell to the ground. Id. (10:25–29). Officers Sutton and Thornton then slowly dragged Mr. Carabajal, lifting his legs, until his entire body was fully out of the vehicle. Id. (10:40–48).

2.    *Analysis*

We review the district court's grant of summary judgment based on qualified immunity de novo. Fisher v. City of Las Cruces, 584 F.3d 888, 893 (10th Cir. 2009). When a defendant asserts qualified immunity, the court must conduct a two-part analysis. Pearson v. Callahan, 555 U.S. 223, 232 (2009). First, a court must determine whether the plaintiff has alleged facts to demonstrate a violation of a constitutional right. Id. Second, if such a demonstration is made, the court must then decide whether the right at issue was "clearly established" at the time. Id. The reviewing court may address the steps

in either order.  Id. at 236.  The burden of making this two-part showing lies with the plaintiff, Mr. Carabajal.  See Hobbs ex rel. Hobbs v. Zenderman, 579 F.3d 1171, 1183 (10th Cir. 2009) (citing Serna v. Colo. Dep't of Corr., 455 F.3d 1146, 1150 (10th Cir. 2006)).  This is a heavy burden.  If the plaintiff fails to satisfy either part of the inquiry, the court must grant qualified immunity.  Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001).

Here, Mr. Carabajal has alleged that Officers Thornton and Sutton violated his Fourth Amendment rights through the use of excessive force.  The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV.  To state a claim for excessive force under the Fourth Amendment, a plaintiff must demonstrate that a "seizure" occurred and that the seizure was "unreasonable."  Brower v. Cty. of Inyo, 489 U.S. 593, 599 (1989). The reasonableness of a seizure depends on when or why the seizure was made and how it was accomplished.  Fisher, 584 F.3d at 894 (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).

Here, there are two claims of excessive force: (1) Officer Thornton's shooting of Mr. Carabajal, and (2) Officers Thornton and Sutton's subsequent removal of Mr. Carabajal from the vehicle after he was shot.  Mr. Carabajal contends that each action was a seizure that was unreasonable, thereby violating a constitutional right, and that the constitutional right was "clearly established" at the time of the alleged misconduct.  The officers respond that summary judgment

was appropriate, because it was objectively reasonable for Officer Thornton to use deadly force when Mr. Carabajal's vehicle moved forward and for both officers to remove Mr. Carabajal from the vehicle after his failure to comply with their directives. Additionally, they contend that it is not "beyond debate" that the officers' conduct was unreasonable, thereby demonstrating that the law was not clearly established.

We address each excessive force claim in turn.

a.      Shooting of Mr. Carabajal

Mr. Carabajal first contends Officer Thornton used excessive force when he stepped toward Mr. Carabajal's vehicle and fired two rounds from his shotgun at Mr. Carabajal. The district court relied on a factually similar case, Thomas v. Durastanti, 607 F.3d 655 (10th Cir. 2010), in concluding that the use of force in this case was reasonable. Carabajal, 2015 WL 9906393, at *6–7. The district court also concluded that Thomas negated the contention that the conduct at issue violated clearly established law. Id. at *7. We agree.

The video evidence confirms that Mr. Carabajal had eluded police for several blocks before pulling over. After being ordered to keep his hands out of the window and not start the vehicle, Mr. Carabajal appeared to deliberately drive his vehicle in Officer Thornton's direction. Though on an open street, two police units were facing Mr. Carabajal's vehicle, with another unit behind Mr. Carabajal. Officer Thornton was positioned facing the oncoming vehicle with two parked

-9-

cars closely behind him. As in Thomas, 607 F.3d at 665–66, in these close quarters, a reasonable officer could conclude that his or her life was in danger and employ deadly force to stop the vehicle.

Mr. Carabajal maintains that this case is distinguishable from Thomas because the scene did not involve close quarters, and Mr. Carabajal was not driving toward the officers, particularly given his alternative explanation that the forward movement of the vehicle was unintentional. According to Mr. Carabajal, the evidence suggests that his foot came off the brake, that he merely placed the vehicle in drive from park, or that he was confused due to hearing varying commands from the officers — not that he accelerated. He further argues that he was never charged with a crime, that he was moving slowly and was of little threat to the safety of others, and that Officer Thornton's reckless or deliberate conduct contributed to the force employed. Mr. Carabajal also contends that when Officer Thornton shot Mr. Carabajal, Officer Thornton knew only that Mr. Carabajal had failed to yield to Officer Johnston or immediately respond to commands to exit the vehicle. He portrays Officer Thornton as having overreacted, after placing himself in the path of Mr. Carabajal's vehicle rather than approaching from behind. Accordingly, Mr. Carabajal contends a jury could conclude that the officers were not in danger, and that Officer Thornton's actions were not ones that a reasonable police officer would have taken.

These distinctions are not persuasive. As discussed above, the position of

-10-

Officer Thornton relative to the vehicles, as evidenced by the videos, shows that the scene involved close quarters. The video evidence further demonstrates that the vehicle was moving in Officer Thornton's direction, and a reasonable officer could have perceived that Mr. Carabajal's driving was deliberate. It was apparent that Mr. Carabajal had notice of police presence; he intentionally eluded a police officer on a slow-speed chase in the dark for several blocks before finally pulling over. The video makes it clear that Mr. Carabajal initially complied and attempted to exit the vehicle, but then got back in. Officer Thornton warned Mr. Carabajal not to start the car or he would shoot. Given Mr. Carabajal's equivocal compliance with police directives, when the vehicle began advancing toward Officer Thornton, he was not required to stand down and hope for the best. As we noted in Thomas, an officer has a right to regain control in these circumstances by moving in closer proximity to the vehicle. Id. at 670. Because the fact that the vehicle was moving slowly does not eviscerate the threat, id. at 670–71, we cannot say that Officer Thornton's conduct was unreasonable.[2]

---

[2] Our conclusion is not altered by this court's decision in Pauly v. White, 814 F.3d 1060 (10th Cir.), reh'g denied, 817 F.3d 715 (10th Cir. 2016), vacated per curiam, 580 U.S. ___, No. 16-67, 2017 WL 69170 (Jan. 9, 2017), which Mr. Carabajal submitted as supplemental authority under Rule 28(j), Fed. R. App. P. Of course, this court's decision was vacated insofar as the "clearly established law" part of the qualified immunity analysis (as to one of the officers involved). Be that as it may, we view Pauly as factually distinguishable: Mr. Carabajal was aware that the officers on scene were affiliated with law enforcement and no facts suggest that Mr. Carabajal questioned the authority of those officers.

-11-

Even if Officer Thornton's conduct constituted excessive force under the Fourth Amendment, it was not clearly established at the time of the shooting that Officer Thornton's conduct was unlawful. Typically, a preexisting Supreme Court or Tenth Circuit decision, or the weight of authority from other circuits, must make it apparent to a reasonable officer that the nature of his conduct is unlawful. Id. at 669 (citations omitted). Such precedent must have put the question of the reasonableness of the officer's conduct "beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (citing Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).

As discussed above, this court in Thomas determined that an officer was entitled to qualified immunity in a situation involving suspects fleeing at relatively low speeds, given the threat of serious physical harm posed by a car moving in the officer's direction. See 607 F.3d at 670–71. The existence of this decision alone seems to foreclose Mr. Carabajal's argument that the unlawfulness of Officer Thornton's conduct was clearly established, and the cases upon which Mr. Carabajal relies do not alter that conclusion.

Mr. Carabajal argues that the Supreme Court's decision in Mullenix v. Luna suggests that qualified immunity is more limited in cases where the driver travels at a low speed. But even accepting this inference as accurate, it suffices to say that an implication cannot put the unlawfulness of certain conduct beyond debate. We also question whether Officer Thornton's conduct at issue here was

-12-

any more troubling than that of the officer who was granted qualified immunity in

Mullenix. From an overpass 20 feet above I-27, that officer fired six shots at a

fleeing vehicle traveling 85 miles per hour, inadvertently killing the driver, all in

an effort to disable the vehicle. 136 S. Ct. at 306–07, 312.

Mr. Carabajal also relies on three decisions from other circuits to contend

that Officer Thornton was on fair notice of the unconstitutional nature of his

conduct.[3] Such cases, however, are too factually distinct to speak clearly to the

situation Officer Thornton confronted. While Mr. Carabajal's cases involved

disputes of material fact as to the position of the police officer relative to the

vehicle at issue and therefore the threat posed to the officer, the video evidence

here clearly shows Officer Thornton was positioned in the path of Mr. Carabajal's

vehicle as it lurched forward. Even if these cases were not factually

distinguishable, they are insufficient to demonstrate that the weight of authority

makes it apparent that Officer Thornton's conduct was unreasonable, particularly

in light of our decision in Thomas and the Eleventh Circuit's decision in

Robinson v. Arrugueta, 415 F.3d 1252 (11th Cir. 2005). In Robinson, the court

held that it was reasonable for an officer to use deadly force to stop a slow-

moving vehicle advancing in his direction, and that clearly established law did not

---

[3] Aplt. Br. at 36–38 (citing Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756 (2d Cir. 2003); Abraham v. Raso, 183 F.3d 279 (3d Cir. 1999); Estate of Starks v. Enyart, 5 F.3d 230 (7th Cir. 1993)).

indicate otherwise.  Id. at 1254–57.

We emphasize, however, that our holding is not a blanket rule that a police officer is entitled to qualified immunity whenever he or she uses deadly force against the driver of a vehicle that is moving in the direction of the officer or other individuals.  The determination of qualified immunity remains heavily dependent on the claim in light of the unique circumstances of each case.  As discussed above, we conclude this particular claim warrants qualified immunity.

b. Removal from the Vehicle

Mr. Carabajal also argues that Officers Thornton and Sutton used excessive force when they removed him from the vehicle after he had been shot.  He contends that the video evidence of the officers' conduct and the words of Officer Sutton describing the incident to police investigators support this claim. According to Mr. Carabajal, the video evidence demonstrates that Officer Sutton "yank[ed] an unresponsive Mr. Carabajal out of his vehicle and propel[led] him out into the street head-first, with enough force that Mr. Carabajal's wounded head [fell] hard upon the pavement."  Aplt. Br. at 41.  Mr. Carabajal asserts Officer Thornton then helped Officer Sutton "shove the rest of Mr. Carabajal's limp body out into the street, after which Thornton drag[ged] Mr. Carabajal several feet away from the vehicle and through the street, by a single handcuffed wrist."  Id.  Mr. Carabajal further argues that Officer Sutton's characterization of the removal, including his observation that Mr. Carabajal was "limp" and

"gurgling a lot of blood and stuff" before he "grabbed" him and gave him "a good tug," evinces additional evidence of a genuine dispute of material fact. Id. at 41–42 (citing 3 Aplt. App. 674). According to Mr. Carabajal, the issue is whether the officers' ostensibly rough removal of his body was justified by their safety concerns.

The excessive force claim is belied by the video evidence. This evidence does not show that Officer Sutton yanked Mr. Carabajal out of the vehicle and propelled him to the ground, nor that Officers Sutton and Thornton shoved his body or dragged it in a rough manner. 1 Aplt. App. 229 (10:25–48). The officers did not use an unreasonable amount of force, making this case distinct from Fisher, 584 F.3d at 892, 895–96 (denying qualified immunity to police officers who placed a knee to the plaintiff's back to leverage his arms behind his body to handcuff him while he was laying on the ground, thereby exacerbating the injuries to his stomach and biceps), nor was it unreasonable under the circumstances for the officers to remove Mr. Carabajal from the vehicle. At the time of the removal, the officers were aware that Mr. Carabajal had been non-compliant, and that he had used his vehicle in a manner inconsistent with police instruction at least twice. Cf. Mecham v. Frazier, 500 F.3d 1200, 1204–05 (10th Cir. 2007) (finding that it was a "foregone conclusion" that arresting a driver of a vehicle would require force given the driver's non-compliance). It was not unreasonable for the officers to elect to remove him from the vehicle under the circumstances,

-15-

his injuries notwithstanding.

Accordingly, Mr. Carabajal has not demonstrated a violation of a constitutional right, and Officers Thornton and Sutton are entitled to qualified immunity on the excessive force claim.

**B.      Seizure of V.M.C.**

Plaintiffs also challenge the dismissal of their claim that V.M.C. was unlawfully seized by Officer Thornton when he shot directly into the vehicle that V.M.C. occupied.  As the sufficiency of a complaint is a question of law, we review the district court's Rule 12(b)(6) dismissal de novo.  Duran v. Carris, 238 F.3d 1268, 1270 (10th Cir. 2001).

As discussed above, to state a claim of excessive force under the Fourth Amendment, V.M.C. must show both that a "seizure" occurred and that the seizure was "unreasonable."  Brower, 489 U.S. at 599.  The "governmental termination of freedom of movement" must be made "through means intentionally applied."  Id. at 596–97 (emphasis omitted).

In Brendlin v. California, the Supreme Court held that a traffic stop subjects both the driver and any passenger to a seizure.  551 U.S. 249, 257–58 (2007).  Thereafter in Plumhoff v. Rickard, 134 S. Ct. 2012, 2022 n.4 (2014), the Court noted the disagreement among federal appellate courts as to whether an automobile passenger is seized when an officer uses deadly force against the driver of the vehicle.  Aplt. Br. at 20–21.  Some circuits have interpreted the

intent requirement in <u>Brower</u> to mean that the officer must have had the objective intent to stop a particular individual, while other circuits have interpreted it to require the objective intent to act in such a way that causes the intended result — a stop — regardless of the target.  Compare, e.g., <u>Landol-Rivera v. Cruz Cosme</u>, 906 F.2d 791, 794–96 (1st Cir. 1990) (holding that a passenger who was accidentally shot by a police officer did not have a Fourth Amendment claim because the officer's intent was to shoot the fleeing driver, not the passenger), <u>with, e.g.</u>, <u>Vaughan v. Cox</u>, 343 F.3d 1323, 1328–29 (11th Cir. 2003) (holding that a passenger who was accidentally shot was subjected to a Fourth Amendment seizure because the officer fired his weapon to stop the car).

In <u>Childress v. City of Arapaho</u>, this court held that two hostages who were passengers in a vehicle being pursued by the police were not seized when police fired shots at the vehicle, inadvertently wounding the hostages.  210 F.3d 1154, 1156–57 (10th Cir. 2000).  Plaintiffs maintain that <u>Childress</u> is distinguishable because it involved the police attempting to deliver hostages from a dangerous situation.  However, we need not address whether our holding in <u>Childress</u> extends to passengers like V.M.C.

We may affirm the district court's judgment as to this claim on any ground supported by record.  <u>GF Gaming Corp. v. City of Black Hawk</u>, 405 F.3d 876, 882 (10th Cir. 2005) (citing <u>Issa v. Comp USA</u>, 354 F.3d 1174, 1178 (10th Cir. 2003)).  Plaintiffs are not pursuing a municipal liability claim based on any

-17-

seizure of V.M.C. Aplt. Reply Br. at 7 n.7. As to the individual liability of Officer Thornton, we note that he raised the defense of qualified immunity in his answer, ECF 38 at 19, and pursued it by motion after this claim was dismissed. 1 Aplt. App. 125–32. We conclude that, even if Plaintiffs pled a plausible unreasonable seizure claim as to V.M.C., Officer Thornton would be entitled to qualified immunity. This is so because Plaintiffs cannot demonstrate that the law was clearly established that a seizure of V.M.C. occurred in these circumstances. See Pearson, 555 U.S. at 232 (discussing the requirements for qualified immunity).

We are comfortable deciding this legal issue on qualified immunity given Plaintiffs' critique of the law contained in their opening brief:

> The Tenth Circuit has yet to address whether the Fourth Amendment protects an automobile passenger seized during the use of deadly force against the driver. Other circuit courts of appeals are divided on the issue. The Supreme Court noted the split in the Circuits in Plumhoff, but specifically "express[ed] no view on this question." However, the Plumhoff Court hinted at a way forward, noting that in a previous case, County of Sacramento v. Lewis, the Court held that a passenger "could recover under a substantive due process theory only *if the officer had a purpose to cause harm* unrelated to the legitimate object of the arrest."

Aplt. Br. at 20–21 (citations omitted). We doubt Plaintiffs have the factual predicate for what they perceive as a hint. Regardless, a hint as to what the law may be cannot substitute for clearly established law. See Mullenix, 136 S. Ct. at 309. As Plaintiffs unequivocally acknowledge, the law simply is not clearly

-18-

established.

**C.      Negligent Hiring of Officer Thornton**

Plaintiffs also challenge the district court's dismissal of their negligent hiring claim against the City, as well as the court's alternative ruling granting summary judgment in favor of the City on the claim.  We review de novo.  Duran, 238 F.3d at 1270 (Rule 12(b)(6) dismissal); Cooperman v. David, 214 F.3d 1162, 1164 (10th Cir. 2000) (summary judgment).  Because we find that summary judgment was proper for the reasons discussed below, we need not address the sufficiency of the pleading.

The Wyoming Governmental Claims Act provides a cause of action against a governmental entity for damages arising from tortious conduct of its officers acting within the scope of their duties.  Wyo. Stat. Ann. § 1-39-112.  Wyoming law further recognizes the tort of negligent hiring, in which an entity may be liable for the conduct of its agents if the entity is negligent or reckless in the employment of improper persons in work that poses a risk of harm to others.  See Basic Energy Servs., L.P. v. Petroleum Res. Mgmt., Corp., 343 P.3d 783, 790 (Wyo. 2015) (citing Restatement (Second) of Agency § 213(b) (Am. Law Inst. 1958)).  Plaintiffs contend that the district court improperly resolved factual disputes as to Officer Thornton's suitability given the excessive force allegations and ignored evidence of negligent hiring.  Such evidence includes unsuccessful attempts at being hired at other law enforcement agencies, uncharged drug use,

the need for a more extensive background investigation given the nature and recency of certain indiscretions, and a lack of follow up.

The tort of negligent hiring imposes liability in cases where the employee acts intentionally against a member of the public. The employer either knew or should have known that the employee might injure others, thereby exposing the public to a potentially dangerous individual. Connes v. Molalla Transp. Sys., Inc., 831 P.2d 1316, 1320–21 (Colo. 1992) (en banc); see also Lindeman v. The Corp. of the President of the Church of Jesus Christ of Latter-Day Saints, 43 F. Supp. 3d 1197, 1209 (D. Colo. 2014) (citing Raleigh v. Performance Plumbing & Heating, 130 P.3d 1011, 1016 (Colo. 2006)).[4] Plaintiffs do not dispute that the City engaged in an extensive investigation[5] into Officer Thornton's qualifications and background that demonstrated he was qualified under Wyoming standards for employment as a police officer. More importantly, the evidence relied upon by Plaintiffs shows no propensity or characteristic that put the City on notice that Officer Thornton was likely to use unnecessary or excessive force against a member of the public. Cf. Lindeman, 43 F. Supp. 3d at 1209. Plaintiffs' cases regarding the admissibility of evidence of drug use to support a negligent hiring

---

[4] Because Colorado and Wyoming both premise the tort of negligent hiring on the Restatement (Second) of Agency § 213, we find Colorado law instructive.

[5] The investigation included a background check, polygraph examination, oral interview, personal references, criminal arrest check, driving record check, credit check, medical examination, and a psychological evaluation.

claim do not persuade us to the contrary. No reasonable factfinder could conclude that it was foreseeable that Officer Thornton would use unnecessary or excessive force. Thus, the City owed no legal duty to protect Plaintiffs as they have alleged. <u>See</u> <u>id.</u> at 1210; <u>Lucero v. Holbrook</u>, 288 P.3d 1228, 1234 (Wyo. 2012).

AFFIRMED.

No. 15-8139, *Carabajal v. City of Cheyenne, Wyoming, et al.*
**MATHESON**, J., concurring

I join the panel opinion regarding Mr. Carabajal's excessive force claims and

Plaintiffs' negligent hiring claim.  As to V.M.C.'s unreasonable seizure claim, I concur in

the result on the following ground:  Whether or not V.M.C. was seized, *see Brendlin v.*

*California*, 551 U.S. 249, 261 (2007) (recognizing that both passengers and drivers are

seized when police use force to stop a car), it follows from our conclusion that Officer

Thornton acted reasonably that any seizure of V.M.C. was reasonable.