# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: 2022-NMCA-023

Filing Date: February 1, 2022

No. A-1-CA-38635

ELSA HERNANDEZ, as Personal
Representative of the Wrongful
Death Claim of Irisema Hernandez,
Deceased,

  Plaintiff-Appellant,

v.

MALIN PARKER, individually,
ROOSEVELT COUNTY SHERIFF'S
DEPARTMENT, and ROOSEVELT
COUNTY BOARD OF COUNTY
COMMISSIONERS,

  Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Fred T. Van Soelen, District Judge**

Released for Publication May 10, 2022.

Eric D. Dixon
Portales, NM

for Appellant

Macke Law & Policy, LLC
Daniel J. Macke
Albuquerque, NM

for Appellees

## OPINION

**WRAY, Judge.**

**{1}**   In this appeal, we are asked to consider whether collateral estoppel precludes state court litigation arising under the New Mexico Tort Claims Act, NMSA 1978, §§ 41-

4-1 to -27 (1976, as amended through 2020) (TCA), when a federal district court has dismissed 42 U.S.C. § 1983 claims because the facts did not establish that a law enforcement officer used excessive force to effectuate an arrest in violation of the Fourth Amendment to the United States Constitution. Concluding it does not, we reverse.

## BACKGROUND

**{2}** According to the complaint filed in the state district court, law enforcement officers observed Irisema Hernandez's car, a white Lincoln, in a motel parking lot. Incorrectly believing that Irisema was violating her conditions of release by staying at the motel, Defendant Sheriff Malin Parker used his unmarked vehicle to block the Lincoln and prevent it from leaving. Sheriff Parker, wearing a black hoodie, and another officer, who was in uniform, approached the Lincoln with guns drawn. With Irisema in the passenger seat, another individual (Driver) pulled the Lincoln out of the parking lot, striking Sheriff Parker in the process. Sheriff Parker returned to his unmarked vehicle and pursued for five minutes, at speeds between 80 and 90 miles per hour, in the rain, and on two-lane rural roads. Ultimately, Irisema's vehicle was forced off the road, possibly by contact from Sheriff Parker's vehicle, and hit a tree. Irisema died from injuries caused by the collision.

**{3}** Plaintiff, as the personal representative of Irisema's wrongful death Estate, brought an action in the United States District Court for the District of New Mexico (federal court) against Sheriff Parker, the Roosevelt County Board of County Commissioners, and the Roosevelt County Sheriff's Department (collectively, Defendants). Plaintiff alleged deprivations of Irisema's rights under the Fourth and Fourteenth Amendments through § 1983, as well as causes of action under the TCA. Sheriff Parker asserted qualified immunity as a defense to Plaintiff's § 1983 claims. The federal court granted Sheriff Parker's motion, dismissed Plaintiff's federal claims against all Defendants, and declined to exercise supplemental jurisdiction over Plaintiff's state law claims.

**{4}** Shortly thereafter, Plaintiff filed a complaint in the state district court against the same Defendants and alleged claims for negligence and aggravated assault and battery under the TCA. Defendants moved to dismiss the TCA claims and argued that because the federal court had already determined that Sheriff Parker acted reasonably, Plaintiff was precluded from litigating the TCA claims. The district court agreed, determined that the issues decided by the federal court and raised in state court were "identical," and applied collateral estoppel to grant Defendants' motion to dismiss. Plaintiff appeals.

## STANDARD OF REVIEW

**{5}** We generally review the application of collateral estoppel for abuse of discretion, unless the facts are not in dispute, in which case we review the issue de novo. *Bank of N.Y. v. Romero*, 2016-NMCA-091, ¶ 23, 382 P.3d 991. Both parties suggest we review this matter as a motion to dismiss—accepting all well-pleaded facts as true and deciding

questions of law de novo. The district court, however, considered facts outside the state pleadings to decide whether to apply collateral estoppel—specifically, the parties' federal court arguments, discovery, and the issues decided by the federal court. We therefore consider the district court's order as a grant of summary judgment and "construe all reasonable inferences in favor of the nonmoving party and will uphold a grant of summary judgment where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *See Tunis v. Country Club Estate Homeowners Ass'n, Inc.*, 2014-NMCA-025, ¶ 17, 318 P.3d 713 (internal quotation marks and citation omitted) (reviewing a claim preclusion issue raised in a motion to dismiss as a motion for summary judgment). "Whether the elements of claim preclusion are satisfied is a legal question, which we review de novo." *Id.* ¶ 20 (internal quotation marks and citation omitted).

{6}     Thus, we review the district court's grant of summary judgment, which was based on the application of collateral estoppel, de novo.

**DISCUSSION**

{7}     Defendants maintain that Plaintiff's TCA claims against Sheriff Parker are estopped by the federal court's determination that Sheriff Parker's actions were "objectively reasonable" in the context of a federal constitutional claim. Specifically, Defendant observes that the federal court decided the "issue of objective reasonableness" and argues that the TCA claims are barred by collateral estoppel because the same standard of "objective reasonableness" must apply to Plaintiff's TCA claims. We conclude that under these circumstances, collateral estoppel does not apply to preclude Plaintiff's TCA claims.

{8}     Collateral estoppel, also called issue preclusion, "prevents a party from re-litigating ultimate facts or issues actually and necessarily decided in a prior suit." *Romero*, 2016-NMCA-091, ¶ 23 (internal quotation marks and citation omitted). The party "invoking collateral estoppel has the burden to introduce sufficient evidence for the court to [determine] whether the doctrine is applicable." *Reeves v. Wimberly*, 1988-NMCA-038, ¶ 15, 107 N.M. 231, 755 P.2d 75. In order for collateral estoppel to apply, four elements must be met:

> (1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication, (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.

*Romero*, 2016-NMCA-091, ¶ 23 (internal quotation marks and citation omitted). Once the movant "has produced sufficient evidence to meet all four elements, the district court must determine whether the party to be estopped had a full and fair opportunity to litigate the issue in the prior litigation." *Tunis*, 2014-NMCA-025, ¶ 24 (internal quotation marks and citation omitted).

**{9}** To review the district court's collateral estoppel determination, we must first examine the legal framework for Plaintiff's federal and TCA claims.

## I.        The Federal and TCA Claims

**{10}** In federal court, Plaintiff brought federal constitutional claims and state tort claims. Plaintiff's federal claims invoked § 1983, which provides a "federal remedy for damages arising out of a constitutional violation by a person acting under color of state law." *Wells v. Cnty. of Valencia*, 1982-NMSC-048, ¶ 6, 98 N.M. 3, 644 P.2d 517. Defendants' invocation of qualified immunity shifted the "heavy burden" to Plaintiff to establish that (1) the facts demonstrated a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the violation. *Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017). Only if a plaintiff meets this burden is the defendant required to establish the absence of disputed material facts. *See Clark v. Edmunds*, 513 F.3d 1219, 1222 (10th Cir. 2008).

**{11}** "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotation marks and citation omitted). The court determines whether the officer's use of force was reasonable after assessing the "non-exclusive factors arising from the police-citizen encounter[,]" which are set forth in *Graham. Cavanaugh v. Woods Cross City*, 718 F.3d 1244, 1255 (10th Cir. 2013). Those factors, considered objectively from the officer's perspective, include the severity of the suspected crime, the threat the suspect poses to safety, and whether the suspect is actively resisting or fleeing. *See Donahue v. Wihongi*, 948 F.3d 1177, 1187, 1196 (10th Cir. 2020). Based on these principles, the federal court reviewed the evidence objectively, from Sheriff Parker's perspective: Driver had battered Sheriff Parker with the Lincoln, fled the scene, did not stop despite the danger, and put the public at risk. Based on this view of the evidence, the federal court concluded Sheriff Parker "was reasonable to end the pursuit and the danger it posed by bumping the back of the [Lincoln]" and that Irisema's "rights under the Fourth Amendment were not violated."

**{12}** In state court, Plaintiff brought claims arising under the TCA for negligence and assault and battery.[1] "Generally, the [TCA] provides governmental entities and public employees acting in their official capacities with immunity from tort suits unless the [TCA] sets out a specific waiver of that immunity." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 6, 121 N.M. 646, 916 P.2d 1313. In the district court and on appeal, Plaintiff maintains that the TCA waives immunity for the

---

[1]Plaintiff additionally brought claims for loss of consortium and vicarious liability. The district court determined these claims were dependent on the tort claims and dismissed the dependent claims based on the dismissal of the tort claims. Plaintiff argues these claims are not estopped, but does not argue that the district court improperly determined the loss of consortium and vicarious liability claims are dependent on the survival of the tort claims. Thus, the loss of consortium and vicarious liability claims stand or fall based on our disposition of the tort claims.

negligent operation of a motor vehicle, Section 41-4-5 and, in relevant part, for "liability for . . . wrongful death . . . resulting from assault [and] battery, . . . when caused by law enforcement officers while acting within the scope of their duties." Section 41-4-12.[2] Plaintiff contends that collateral estoppel does not bar these TCA claims, because the relevant issues were not litigated and decided in federal court and there has been no opportunity to fully and fairly litigate the issues. We agree.

**{13}** It is well-established that "[n]ot all tortious conduct amounts to a constitutional deprivation." *Wells*, 1982-NMSC-048, ¶ 6. The *Wells* Court considered whether a plaintiff could pursue both a constitutional claim under § 1983 and a claim under the TCA. *Wells*, 1982-NMSC-048, ¶ 3. Although a constitutional deprivation "can grow out of tortious conduct, the two are distinct concepts compensable under different laws." *Id.* ¶ 7.

> Tortious conduct which does not amount to a constitutional violation does not state a cause of action under [§] 1983, but may be fully compensable under a state remedy for a tortious loss. In the case at bar, [the] plaintiff's allegations may not be compensable under [§] 1983, but may be compensable under the [TCA].

*Wells*, 1982-NMSC-048, ¶ 7 (citation omitted). A tort, the *Wells* Court determined, "is separate and distinct from a constitutional deprivation." *Id.* ¶ 8. While the *Wells* holding makes clear that tort claims and federal constitutional claims are legally distinct and may coexist, our collateral estoppel inquiry cannot end here. Whether the subject matter of the claims is different is only one element of collateral estoppel. *See Ullrich v. Blanchard*, 2007-NMCA-145, ¶ 19, 142 N.M. 835, 171 P.3d 774 (outlining the four collateral estoppel elements).

**{14}** The collateral estoppel doctrine "prevents a party from re-litigating ultimate facts or *issues* actually and necessarily decided in a prior suit," *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 13, 139 N.M. 637, 137 P.3d 577 (internal quotation marks and citation omitted), provided the party has "had a full and fair opportunity to litigate the issue in the prior litigation." *Tunis*, 2014-NMCA-025, ¶ 24 (internal quotation marks and citation omitted). Defendants argue that Plaintiff's tort claims are precluded because (1) "[t]he issue of objective reasonableness" was litigated and decided in federal court and (2) "the objectively reasonable standard is the applicable standard to be applied in the remaining [s]tate law claims[.]" We consider Defendants' arguments in the context of Plaintiff's TCA claims separately.

## II.   Plaintiff's Negligence Claim Under the TCA Was Not Actually Litigated and Necessarily Decided in Federal Court

**{15}** Plaintiff's negligence claims arise from Section 41-4-5 of the TCA, which waives immunity, in relevant part, for the "damages resulting from . . . wrongful death . . .

---

2The Legislature's 2020 amendments to Section 41-4-12 have no bearing on the present analysis, and so we cite the more recent statute.

caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any motor vehicle." Liability for acts or omissions under the TCA is "based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty." Section 41-4-2(B). A traditional tort claim "requires the existence of a duty from a defendant to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages." *Milliron v. Cnty. of San Juan*, 2016-NMCA-096, ¶ 11, 384 P.3d 1089 (internal quotation marks and citation omitted).

**{16}** Law enforcement officers are subject to the Section 41-4-5 immunity waiver and have a duty under the common law to exercise the care of a "reasonably prudent and qualified officer" in the same situation. *Wilson v. Grant Cnty.*, 1994-NMCA-001, ¶¶ 4, 9, 117 N.M. 105, 869 P.2d 293. In *Wilson*, this Court explained that Section 41-4-5 must be interpreted so that officers "are expected to exercise only the care that a reasonably prudent and qualified officer would exercise in the same situation." *Wilson*, 1994-NMCA-001, ¶ 9. We held that "if officers operate a motor vehicle more carelessly than a reasonably prudent officer would in the same circumstances, they will not be immune from suit if an accident results." *Id*. Defendants equate the "reasonably prudent officer" standard of care referenced in *Wilson* with the "objectively reasonable" standard applied in Fourth Amendment cases and contend that because the federal court determined the latter, the former must also be established. Plaintiff responds that no authority establishes that the Fourth Amendment standard is the same as the standard of care applicable under the TCA. We agree with Plaintiff. In *Wilson*, we did not define a standard of care for law enforcement, much less hold that the standard of care under Section 41-4-5 mirrored the Fourth Amendment standard to determine excessive force. Instead, we identified a duty to act as a reasonably prudent officer. Under traditional tort principles, whether that duty was breached would depend on the applicable standard of care. *See* § 41-4-2(B) (basing liability on "traditional tort concepts of duty" and the standard of care in performing that duty).

**{17}** "Where the defendant is a professional, the duty imposed by law is not the requirement to exercise 'ordinary care' under the same or similar circumstances but to apply the knowledge, care, and skill of reasonably well-qualified professionals practicing under similar circumstances." *Oakey, Estate of Lucero v. May Maple Pharmacy, Inc.*, 2017-NMCA-054, ¶ 25, 399 P.3d 939 (internal quotation marks and citation omitted). New Mexico views "statutes, regulations, and court rules imposing requirements on professionals [as] relevant to the determination of the standard of care required by the circumstances and whether it has been met, even if they do not necessarily suffice to establish a standard of care or provide a cause of action for their violation." *Id.* ¶ 26; *see also Rutherford v. Chaves Cnty.*, 2002-NMCA-059, ¶ 11, 132 N.M. 289, 47 P.3d 448 (explaining that the duty for claims brought under the TCA "must be found outside the [TCA] either at common law or by statute" (internal quotation marks and citation omitted). In the present case, Plaintiff maintains that Sheriff Parker was required to conform his pursuit conduct to the Law Enforcement Safe Pursuit Act, NMSA 1978, §§ 29-20-1 to -4 (2003) (LESPA).

**{18}** LESPA requires the chief law enforcement officer of every state to establish and enforce written policies "governing the conduct of law enforcement officers . . . who are involved in high speed pursuits." Section 29-20-4(A). LESPA further outlines the mandatory minimum policies and requirements to address safe pursuit. *See* § 29-20-4(C) (listing multiple mandatory considerations for law enforcement officers engaging in pursuit). LESPA imposes mandatory requirements for law enforcement and is relevant to determine the professional standard of care under these circumstances. Defendants argue that LESPA is irrelevant for four reasons.

**{19}** First, Defendants note that LESPA "does not provide the basis for a cause of action," but do not explain why a statute must itself establish a private cause of action to be relevant to the standard of care under the TCA. *See Torres v. State*, 1995-NMSC-025, ¶ 11, 119 N.M. 609, 894 P.2d 386 (noting that a statute imposing a duty to investigate crimes formed the basis for a cause of action under the TCA). The TCA provides for the cause of action if immunity is waived, and LESPA is relevant to establish the standard of care.

**{20}** Second, Defendants state that "LESPA does not set forth a standard of care applicable to a common-law claim of negligence" but instead only outlines "provisions to be embodied in a written policy of the local government agency. LESPA, however, requires departments to impose mandatory policies on law enforcement officers' pursuit behavior and decision-making and is a statement of New Mexico's policy regarding police pursuits. As a result, LESPA is a statute "imposing requirements on professionals" and is relevant to determine the standard of care. *Oakey*, 2017-NMCA-054, ¶ 26.

**{21}** Third, Defendants argue that LESPA's provisions are just an embodiment of the "common-law" standard. We construe Defendants third argument to be that LESPA's provisions outline what an objectively reasonable officer would do under the circumstances and that the federal court's finding of "objective reasonableness" actually and necessarily included the considerations outlined in LESPA. We disagree for two reasons. First, Defendants point to Section 29-20-4(C)(1) to suggest that the requirements of LESPA embody the common law. Section 29-20-4(C)(1) states as follows:

> [A] law enforcement officer may initiate a high speed pursuit to apprehend a suspect who the officer has reasonable grounds to believe poses a clear and immediate threat of death or serious injury to others or who the officer has probable cause to believe poses a clear and immediate threat to the safety of others that is ongoing and that existed prior to the high speed pursuit[.]

Section 29-20-4(C) mandates that written policies "shall, at a minimum, require" four separate provisions, including the provision Defendants cite but also including three other specific requirements to which Defendants do not refer. *See generally* § 29-20-4(C) (listing four separate policy requirements linked by the "and" conjunction). Second,

the federal court's "objectively reasonable" finding did not consider the state policy objectives set forth in LESPA but instead relied on federal constitutional policy.

**{22}** Based on the constitutional balance struck by the Supreme Court of the United States in *Scott v. Harris*, 550 U.S. 372 (2007), the federal court rejected Plaintiff's position that Sheriff Parker should have stopped the chase under the circumstances, explaining:

> The Estate's underlying assumption that Sheriff Parker should have simply stopped chasing [Driver] and thereby ended the threat to [Driver and Irisema], and the public does not withstand scrutiny. As the Supreme Court explained in *Scott*, 'there would have been no way to convey convincingly to [Driver] that the chase was off, and that he was free to go.' *Scott*, 550 U.S. at 385. In fact, [Driver] 'would have had no idea whether [police] were truly letting him get away, or simply devising a new strategy for capture.' *Id.* As a result, [Driver] 'might have been just as likely to respond by continuing to drive recklessly as by slowing down and wiping his brow.' *Id.* Additionally, requiring Sheriff Parker to capitulate would create obvious, 'perverse incentives' that a 'fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights.' *Id.* As did the Supreme Court in *Scott*, [this] Court here rejects the Estate's implication that Sheriff Parker was required to stop the chase and give up.

LESPA, however, sets forth New Mexico public policy governing law enforcement vehicle pursuits. Section 29-20-4(C)(2) states that written law enforcement policies shall require that "a law enforcement officer shall not initiate or continue a high speed pursuit when the immediate danger to the officer and the public created by the high speed pursuit exceeds the immediate danger to the public if the occupants of the motor vehicle being pursued remain at large[.]" LESPA additionally outlines a number of factors that law enforcement must consider "when deciding whether to initiate or continue a high speed pursuit[.]" Section 29-20-4(C)(3). For example, under LESPA, in order to initiate and continue a pursuit, an officer considers factors like the road conditions, vehicle and pedestrian traffic, and the ability to locate the suspect at a later date. Section 29-20-4(C)(3)(c)-(e). LESPA reflects the state's concerns about the dangers posed to the community by police chases. At its heart, the Fourth Amendment involves a "careful balancing" of individual protections and government interests. *Graham*, 490 U.S. at 396. LESPA strikes a different legal and factual balance than federal constitutional law and provides a different framework for a jury to consider the reasonableness of the decision to initiate and continue a pursuit.

**{23}** Fourth, Defendant appears to argue that LESPA is only relevant to the standard of care if Plaintiff pursues a negligence per se claim, which Defendant maintains Plaintiff cannot establish under LESPA. Defendant cites *Heath v. La Mariana Apartments*, 2008-NMSC-017, ¶ 22, 143 N.M. 657, 180 P.3d 664 and asserts "negligence per se is the same as simple negligence except that the standard of care is defined by statute rather

than by common law." The *Heath* Court, however, considered potential conflicts between the common law and statutory standards and concluded "[t]he statutory standard serves to supplement the common law standard, and the jury may be instructed on negligence per se using the statutory standard." *Id.* ¶ 22. *Heath* does not prohibit the use of a statutory standard of care for a simple negligence claim but instead, instructs on how a statutory standard of care supplements the common law to establish a standard of care for a negligence per se claim—when a negligence per se claim is made. We cannot find in the pleadings or briefs where Plaintiff argues for the application of negligence per se.[3]

**{24}**   We return then to collateral estoppel. In *Deflon*, our New Mexico Supreme Court gave two reasons why an issue was not actually litigated and necessarily decided in a prior federal proceeding. One reason was that the "threshold showing" for the federal claims was "different from what [was] needed to establish" the state claims. 2006-NMSC-025, ¶ 17. Another reason was that "a substantial portion of [the p]laintiff's evidence was excluded in federal court but would not be excluded in state court." *Id.*

**{25}**   In the present case, a Fourth Amendment claim under § 1983 and a negligence claim pursuant to Section 41-4-5 require different threshold showings. The relevant Fourth Amendment inquiry considers whether a policer officer used excessive force. The issue of excessive force turns on whether the officer's actions were "objectively reasonable." *Graham*, 490 U.S. at 396-97. For a TCA claim, the question is whether an officer exercised "the care that a reasonably prudent and qualified officer would exercise in the same situation." *Wilson*, 1994-NMCA-001, ¶ 9. Despite similar phrasing, the standard of care for police pursuits, informed by LESPA, is broader than the Fourth Amendment standard applied to allegations of excessive force in effectuating a seizure. The federal court balances the nature of the crime committed by the suspect, the threat posed by the suspect, and whether the suspect is fleeing. *See Donahue*, 948 F.3d at 1196. The negligence claim, on the other hand, considers the conduct in the context of the professional standard of care for police pursuits. As a result, the issues were not actually litigated and necessarily decided, and collateral estoppel does not preclude Plaintiff's negligence claim.

### III.   Plaintiff's Assault and Battery Claims Were Not Actually Litigated and Necessarily Decided in the Federal Court

**{26}**   Plaintiff additionally brought a claim for aggravated assault and battery. Section 41-4-12 waives immunity for law enforcement officers where their actions result in liability for the enumerated torts of assault and battery. *Weinstein*, 1996-NMSC-021, ¶ 6; *see* § 41-4-12. Defendants continue to argue that the federal court's determination

---

[3]Section 41-4-12 waives immunity for claims against law enforcement officers, in relevant part, for personal injury arising from the failure to comply with duties established under a statute. To the extent Plaintiff argues that violations of LESPA establish a claim under Section 41-4-12, we are unpersuaded that LESPA imposes a duty on law enforcement officers that creates a cause of action under Section 41-4-12. *See Torres*, 1995-NMSC-025, ¶ 11.

that Sheriff Parker acted "objectively reasonably" precludes Plaintiff's assault and battery claims.

**{27}** We again begin with identifying the "threshold showing" for assault and battery. As an initial matter, the parties cite different sources for the elements of assault and battery. Defendants cite *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1208-09 (10th Cir. 2006), which in turn cites the Restatement (Second) of Torts § 18 (Am. L. Inst. 1965), to define battery. We agree that the Restatement (Second) of Torts § 18 appropriately defines the elements for civil battery and assault. *See Young v. Gila Reg'l Med. Ctr.*, 2021-NMCA-042, ¶¶ 28-29, 495 P.3d 620 (citing the Restatement (Second) of Torts to discuss civil battery defenses); *State v. Ortega*, 1992-NMCA-003, ¶ 12, 113 N.M. 437, 827 P.2d 152 (applying the Restatement (Second) of Torts § 18 to a criminal battery charge).

**{28}** According to the Restatement (Second) of Torts, the elements of civil battery are as follows:

> (a)  [an] act[] intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and

> (b)  an offensive contact with the person of the other directly or indirectly results.

Restatement (Second) of Torts § 18. For assault, the actor need only intend to cause another to be put in imminent apprehension of harmful or offensive contact, but the contact need not occur. Restatement (Second) of Torts § 21 (Am. L. Inst. 1965) (defining assault). Defendants do not argue that Plaintiff is precluded from proving these elements. Instead, Defendants appear to argue that the federal court's determination that Sheriff Parker did not violate the Fourth Amendment establishes a complete defense to Plaintiff's civil assault and battery claims. With this, we disagree. Defendants cite no authority establishing that a plaintiff's failure to satisfy the Fourth Amendment standard is a complete defense to claims for civil assault and battery.

**{29}** In support of their argument that "no different standard" applies to evaluate claims under the Fourth Amendment and intentional torts, Defendants cite *Mead v. O'Connor*, 1959-NMSC-077, 66 N.M. 170, 344 P.2d 278, *State v. Gonzales*, 1982-NMCA-043, 97 N.M. 607, 642 P.2d 210, and *State v. Kraul*, 1977-NMCA-032, 90 N.M. 314, 563 P.2d 108. In *Mead*, our Supreme Court affirmed a jury's verdict against a defendant police officer, because though officers, within reasonable limits, judge "the force necessary to enable them to make arrests" and courts "afford them the utmost protection" when officers act in good faith, "it devolves upon the jury, under the evidence in the case and proper instructions of the court, to resolve these questions." 1959-NMSC-077, ¶ 4. This Court in *Gonzales* and *Kraul* considered self-defense instructions in the context of battery on a peace officer charges. *Gonzales*, 1982-NMCA-043, ¶¶ 1, 16-17; *Kraul*, 1977-NMCA-032, ¶¶ 1, 29, 31-32. In none of these cases did the Courts

consider whether the plaintiff's inability to establish a violation of the Fourth Amendment in federal court either precluded claims for civil assault and battery or acted as a complete defense to such claims. Further, unlike *Gonzales* and *Kraul*, the present case does not involve justification for the use of force against a police officer or self-defense, but instead whether a police officer can be civilly liable for assault and battery when a federal court has determined that the officer did not exercise constitutionally excessive force.

**{30}** Defendants additionally looked to *Reynaga v. County of Bernalillo*, 64 F.3d 670 (10th Cir. 1995) (unpublished table decision).[4] In *Reynaga*, a plaintiff brought claims for excessive force under § 1983 and for battery. *Reynaga*, 64 F.3d at **1-2. The plaintiff argued that the battery jury instruction improperly required the jury to find the officer used "unlawful force." *Id.* at *2. The *Reynaga* court—citing *Kraul*, *Gonzales*, and *Mead*—determined that because the officer "was privileged to use reasonable force . . ., the court correctly instructed that the battery claim could prevail only if [the] plaintiff proved that [the officer] used 'unlawful force.' " *Reynaga*, 64 F.3d at *2. Defendants do not argue that Plaintiff would have to prove Sheriff Parker's force was "unlawful" in order to establish civil assault and battery. Rather, Defendants argue that the legal standards applied to the Fourth Amendment and for civil assault and battery are the same.

**{31}** The *Reynaga* court did not consider whether the standard for the Fourth Amendment and the standard for defending civil battery were the same. The *Reynaga* court determined the jury instruction requiring "unlawful force" comported with a "general rule," which the court quoted from 6 Am. Jur. 2d, *Assault & Battery* § 125 (1963): "a law enforcement officer 'is not civilly liable for' using 'such force as may be reasonably necessary in the enforcement of law and the preservation of order.' " *Id.* at *2 (quoting 6 Am. Jur. 2d, *Assault & Battery* § 125 (1963)). The current iteration of a "general rule," or privilege, for law enforcement officers to use force, drawn from the same source that the *Reynaga* court quoted, states:

> Police officers may not be held liable in an action for assault and battery for the use of reasonably necessary force in the enforcement of the law. Officers are privileged to use force or commit battery when making a lawful arrest. The test for qualified privilege in an assault and battery suit is both subjective and objective: the officer must subjectively believe that he or she used no more force than necessary, but the officer's judgment is compared to that of a hypothetical reasonable police officer placed in the same situation.

---

[4]Defendants cite two unpublished federal cases, *Park v. Gaitan*, 680 F. App'x 724 (10th Cir. 2017) (unpublished table decision) and *Navarro v. N.M. Dep't of Pub. Safety*, No. 2:16-cv-1180, 2018 WL 4148452 (D.N.M. Aug. 30, 2018) (mem. and order). These courts cited *Gonzales*, *Mead*, and *Kraul* to dismiss state assault and battery claims after determining the plaintiff failed to establish a Fourth Amendment violation. *Park*, 680 Fed. App'x at 740, 743-44; *Navarro*, No. 2:16-cv-1180, 2018 WL 4148452 at **12-13.

The use of deadly force by a peace officer is privileged where used to prevent death or serious bodily harm to the officer or other persons.

6 Am. Jur. 2d, *Assault & Battery* § 104 (2021) (footnotes omitted). Thus, the "general rule" that supported the *Reynaga* decision has been amended to include both an objective and a subjective test. The Fourth Amendment is famously a strictly objective test. As a result, *Reynaga* does not persuade us that a failure to establish a Fourth Amendment violation erects a defense to civil claims for assault and battery brought under the TCA.

**{32}** None of the cases cited by Defendants directly address the matter at hand: whether a plaintiff's failure to establish a Fourth Amendment claim for excessive force likewise establishes a defense for civil assault and battery claims brought under the TCA. The parties do not propose, and we do not adopt, a specific privilege as a defense to a civil claim of assault and battery brought against a police officer. Nevertheless, the traditional defenses for law enforcement to assert in response to civil assault and battery claims are not the same as the "objectively reasonable officer" standard that is at the root of Fourth Amendment analysis. *See, e.g.*, 6 Am. Jur. 2d, *Assault & Battery* § 104 (defining an objective and subjective test for the privileged use of force for police officers as a defense to civil assault and battery); Restatement (Second) of Torts § 131 (1965) (affording a privilege for the use of deadly force by a police officer if the officer reasonably believed the other committed a felony and reasonably believed the arrest could not "otherwise be effected"). We therefore reject Defendants' suggestion that the federal court's determination that Sheriff Parker's actions were objectively reasonable under the Fourth Amendment is a complete defense to civil assault and battery and hold that the issues pertaining to defenses to civil assault and battery were not actually litigated and necessarily decided by the federal court.

**IV. Plaintiff Did Not Have A Full and Fair Opportunity to Litigate Her Claims in the Federal Court**

**{33}** We further hold that Plaintiff did not have a full and fair opportunity to litigate the state law issues in the federal court proceeding. *Tunis*, 2014-NMCA-025, ¶ 19. We pause briefly to address the mechanism for collateral estoppel. Generally, we do not reach whether the parties had an opportunity to fully and fairly litigate if we determine that the other four elements of collateral estoppel were not met. *See Shovelin v. Cent. N.M. Elec. Coop., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293, 850 P.2d 996 ("If the movant introduces sufficient evidence to meet all elements of this test, the trial court must then determine whether the party against whom estoppel is asserted had a full and fair opportunity to litigate the issue in the prior litigation."). In the present case, however, the differences between the federal and the state proceedings merit our attention. *Id.* ¶ 15 (weighing, in relation to a full and fair opportunity to litigate, "countervailing factors including, but not limited to, the incentive for vigorous prosecution or defense of the prior litigation; procedural differences between the prior and current litigation, including the presence or absence of a jury; and the possibility of inconsistent verdicts").

**{34}** First, in state court, the question of reasonableness is generally reserved for the jury, while the federal court decides the constitutional "reasonableness" question as a matter of law in the excessive force context. Under the Fourth Amendment, the question whether the force used was reasonable is a mixed question of law and fact. *See Cavanaugh*, 718 F.3d at 1254. At the summary judgment stage, the federal court considers "whether, under all the circumstances, the officer's use of force was reasonable." *Id.* at 1255. This question is "channeled" through the *Graham* factors. *Cavanaugh*, 718 F.3d at 1255. If the facts pertaining to these factors are disputed, the matter of excessive force goes to the jury. *Id.* at 1255. If the facts are not disputed, the court decides whether the officer's conduct was reasonable as a matter of law. *See Donahue*, 948 F.3d at 1187 ("[W]here there are no disputed questions of historical fact such as on summary judgment, the court makes the determination of reasonable suspicion, probable cause, or excessive force on its own as a question of law." (omissions, alterations, internal quotation marks, and citation omitted)). New Mexico courts, on the other hand, prefer reasonableness questions to be decided by a jury. *See Oakey*, 2017-NMCA-054, ¶ 24 (observing that "questions concerning whether the defendant has exercised proper care in the performance of a legal duty are factual issues"); *see also Martinez v. N.M. Dep't of Transp.*, 2013-NMSC-005, ¶ 47, 296 P.3d 468 ("Questions of 'reasonableness' are quintessential issues for a jury to resolve."). Plaintiff therefore did not have a full and fair opportunity to have a jury determine reasonableness in relation to the TCA claims.

**{35}** Second, the federal and state causes of action allocate the burden of proof differently. The federal qualified immunity analysis shifts the entire burden of proof to the plaintiff. *See Carabajal*, 847 F.3d at 1208 (describing the heavy burden borne by the plaintiff to overcome qualified immunity at the summary judgment stage). For the TCA claims, to the extent "reasonableness" is a defense, the defendant bears the burden to establish the defense or privilege. *See* UJI 13-304 NMRA (assigning the burden of proof to the party relying upon a defense). In federal court, therefore, Defendants were required to shoulder none of the burden, whereas in state court, Defendants would have to prove their own defenses.

**{36}** Third, the federal court explicitly did not consider the facts in the context of the state claims. The federal court stated: "[t]he facts set forth here are those critical to the qualified immunity analysis and the background of the case, not to the state law claims that may well permit the parties to consider [Driver's] state of mind as well as Sheriff Parker's." With this comment, the federal court appears to be referring to the tort concept of comparative fault, in which those that contribute to an injury are held liable for only their own portion of the fault. *See Garcia v. Gordon*, 2004-NMCA-114, ¶ 8, 136 N.M. 394, 98 P.3d 1044 ("Pure comparative negligence denies recovery for one's own fault; it permits recovery to the extent of another's fault; and it holds all parties fully responsible for their own respective acts to the degree that those acts have caused harm." (internal quotation marks and citation omitted)). The parties did not brief comparative fault or its relevance to the collateral estoppel analysis, and so we do not address it. Nevertheless, the federal court noted that the facts could be viewed

differently in the context of the TCA claims, which suggests Plaintiff did not have a full and fair opportunity to litigate the TCA claims.

**CONCLUSION**

**{37}** Having concluded that collateral estoppel does not apply and Plaintiff's state court claims brought pursuant to the TCA are not precluded by the federal court's grant of summary judgment on the § 1983 excessive force claim, we reverse and remand for further proceedings.

**{38} IT IS SO ORDERED.**

**KATHERINE A. WRAY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**KRISTINA BOGARDUS, Judge**